**Douglas WELLS, Plaintiff-Appellant,**

**v.**

**Gayle FRANZEN, et al.,**
**Defendants-Appellees.**

**No. 84–1669.**

United States Court of Appeals,
Seventh Circuit.

Submitted March 26, 1985.*

Decided Nov. 26, 1985.

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). Plaintiff has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Douglas Wells, pro se.

Patricia Rosen, Atty. Gen. of Ill., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and WOOD and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

*Pro se* plaintiff, Douglas Wells, an inmate at the Menard, Illinois, Correctional Center, filed suit for damages and for declaratory and injunctive relief against various prison officials for injuries stemming from his nine-day confinement in bodily restraints. The magistrate granted summary judgment for defendants. We reverse.

This lawsuit concerns an episode in which plaintiff was confined to a bed after prison officials concluded that he might be suicidal. Plaintiff alleges that without being examined by a physician or psychiatrist he was "shackled" by his four limbs to a bed in the Menard Medical Unit. After four days, plaintiff was interviewed briefly by a psychiatrist and, although he denied ever expressing suicidal intentions, remained tied down for another five days. During this nine-day period, plaintiff alleg-

es, he was not allowed to shower, have clean bedding, use the bathroom, have regular access to water, send or receive mail, possess reading material or anything other than his underpants and was unable to prepare a defense to unrelated disciplinary charges. Plaintiff claims that the restraints were carelessly applied, causing abrasions and bruises and restricting blood flow to his limbs. Plaintiff also states that he was allowed to use a urinal pitcher only at the convenience of prison guards and that it would stand unemptied for two days at a time with its contents rotting on the bed-table next to him, while he ate his meals with one hand. Despite repeated complaints of itching, headaches and a rash, which were all exacerbated by plaintiff's inability to minister to his own complaints, plaintiff alleges that he did not receive medical attention for days. He also contends that an officer vetoed a nurse's recommendation that plaintiff be allowed to shower. Finally, plaintiff asserts that at no time did he ever attempt to harm himself.

## I.

■ Plaintiff first complains that his due process rights were violated by virtue of his restraint. This is one of plaintiff's most serious claims, yet it was apparently given scant attention by the magistrate. The due process clause of the United States Constitution guarantees to every person freedom of bodily movement. *Youngberg*

v. *Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). This right survives criminal conviction. *Id.* *See also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979) (Powell, J., concurring); *Johnson ex rel. Johnson v. Brelje*, 701 F.2d 1201, 1209 (7th Cir.1983). It protects mental patients, *see Parham v. J.R.*, 442 U.S. 584, 601, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (voluntarily committed juvenile); *Youngberg*, 457 U.S. at 316, 102 S.Ct. at 2458 (low-I.Q. adult lacking self-care skills), and pre-trial detainees who are mentally unfit to stand trial, *Brelje*, 701 F.2d at 1208–09. Convicted prisoners who are assertedly suffering from mental illness also retain such a right.[1]

■ Freedom of bodily movement is a substantive right derived from the due process clause, and it is breached when a prisoner is bodily restrained except pursuant to an appropriate exercise of judgment by a health professional.[2] *See Youngberg*, 457 U.S. at 321–23, 102 S.Ct. at 2461–62. *See also Brelje*, 701 F.2d at 1209. While a decision to restrain a prisoner as a suicide risk is presumptively valid when it is made by a professional in accordance with professional standards, *cf. Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982); *Johnson ex rel. Johnson v. Brelje*, 701 F.2d 1201, 1209 (7th Cir.1983), it is the duty of a court to ensure that professional judgment in fact was ex-

---

**1.** Of course, this does not mean that such prisoners have a right to move freely about the prison at will. Nonetheless, the right involved here precludes, at the very least, unreasonable restriction of prisoners' freedom to move their arms and legs.

**2.** In addition, a state-created liberty interest in the appropriate level of confinement might create a due process right to be free from bodily restraints absent appropriate procedural safeguards. *See Hewitt v. Helms*, 459 U.S. 460, 466–72, 103 S.Ct. 864, 868–71, 74 L.Ed.2d 675 (1983). For example, Illinois regulation A.R. 842(I) provides:

> Therapeutic restraint measures are utilized to restrict the resident's freedom of action to prevent physical injury to himself or others. The use of such restraint measures shall be

employed only when less drastic measures have proven to be ineffective.

and A.R. 842(II)(H) states:

> In all cases, therapeutic restraint measures shall be removed at the earliest possible moment based upon the resident's behavior and clinical condition.

However, a medical determination by the appropriate professional provides all of the process that is due in such a case, *cf. Jackson v. Indiana*, 406 U.S. 715, 733–37, 92 S.Ct. 1845, 1855–57, 32 L.Ed.2d 435 (1972); thus, if plaintiff's substantive due process rights were not violated (because professional judgment was exercised), any procedural due process requirements (which require essentially the same exercise of professional judgment) would undoubtedly have been fulfilled as well.

ercised in the decision to restrain. *See Youngberg*, 457 U.S. at 321, 102 S.Ct. at 2461; *Brelje*, 701 F.2d at 1209. Due process requires that the nature and duration of physical restraint bear some reasonable relation to the purpose for which it is prescribed. *See Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).

■ Long-term restraint decisions should be made by psychiatric personnel. *Cf. Youngberg*, 457 U.S. at 324 n. 30, 102 S.Ct. at 2462 n. 30. Shorter-term decisions are appropriately made by nurses and non-psychiatric physicians. Of course, in emergencies it may not be possible to contact medical personnel, and liability cannot be imposed on lay prison employees when circumstances dictate that immediate action be taken. *Id.* However, these emergency circumstances cannot justify confinement for several days without a proper determination by the appropriate health professional.

We emphasize that we are not prescribing a simple malpractice standard. As the Supreme Court has stated:

[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462. Federal courts should avoid undue interference with the operations of state institutions. Judges and juries are not better qualified than trained professionals to determine an appropriate treatment, *id.*, and the due process standard is based on norms set by the mental health professionals, *see id.* Prison administration is a difficult undertaking at best, *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974), and obviously many aspects of constitutional rights which would otherwise apply do not apply inside prison walls. On the other hand, there is no indication here that plaintiff was a threat to anyone other than himself. In

contrast, in *Youngberg v. Romeo*, the respondent was unable to care for his own personal hygiene and was prone to violent rages, yet the Supreme Court held that he retained a right to be free from bodily restraints absent a professional determination that that treatment was appropriate. 457 U.S. at 309–11, 324, 102 S.Ct. at 2454–55, 2462. The same standard applies here.

■ At trial, plaintiff would have the burden of proving that the bodily restraint employed here constituted a substantial departure from accepted professional practice. *See id.* at 323, 102 S.Ct. at 2462; *Brelje*, 701 F.2d at 1209. However, this appeal comes to us after a grant of summary judgment for defendants, and it is, therefore, defendants' burden to show that no disputed issues of material fact exist; *see Blue Ribbon Feed Co., Inc. v. Farmers Union Central Exchange*, 731 F.2d 415, 419–20 (7th Cir.1984). In support of their motion for summary judgment, defendants filed photocopies of handwritten documents labeled "Menard Correctional Center, Nurses Notes." These papers were unaccompanied by certifying affidavits or other means of authentication, as required by Rule 56(e), Fed.R.Civ.P., and hence cannot be considered, *see Martz v. Union Labor Life Insurance Co.*, 757 F.2d 135, 138 (7th Cir. 1985). In any event, even if properly authenticated and admissible under an exception to the hearsay rule, which of course generally applies on summary judgment, *see Pfeil v. Rogers*, 757 F.2d 850, 860 (7th Cir.1985), the notes do not demonstrate that defendants are entitled to judgment as a matter of law. Typical is the entry for 9:00 a.m., September 22, 1979, by a nurse whose signature is illegible. The entry states: "Rounds made by Dr. Herath, Orders written [and] carried out." This entry does not indicate whether Dr. Herath actually examined or talked to the plaintiff nor does it explain the nature of the orders given. Other notations are similarly cryptic. It is impossible to tell from documents like these whether plaintiff's continued restraint satisfied due process.

In his complaint, plaintiff alleges that, when he was first referred to the Menard medical unit, he was briefly interviewed by a nurse, who then spoke with a physician. This doctor then ordered the measures of restraint. There is nothing in the record, however, to indicate that the physician actually examined the plaintiff. Further, even if evidence adduced at trial can establish that the *initial* emergency restraint of plaintiff was professionally reasonable under the circumstances, this does not demonstrate the propriety of plaintiff's continued confinement. Further, plaintiff agrees that he was interviewed by a psychiatrist on the fifth day of his confinement, but he asserts that this interview was "shallow." At this stage of the litigation we cannot say that this interview was adequate to enable the psychiatrist to make a decision based on the exercise of professional judgment. Specifically the question is whether one such interview is professionally adequate to justify four more days of bodily restraint. It is impossible for us to determine whether the circumstances surrounding plaintiff's restraint represented a substantial departure from the relevant professional standards. Indeed, there is no evidence in the record to indicate what the applicable professional standards might be.[3]

 Plaintiff also alleges that prison guards—apparently acting independently of Menard's medical personnel—ordered that he was not allowed to take a shower, have clean bedding, be released from more than one binding while eating, get up to use the bathroom, have a plastic water pitcher or possess any items besides the shorts that he was wearing. Defendants, some of whom are these guards, do not indicate whether there were bona fide security justifications for these restrictions; however, plaintiff's due process right to be free of bodily restraint absent a proper determination of need is infringed if prison guards interfere with medical personnel who are exercising professional judgment. Restrictions imposed by guards, which are medically unjustifiable in connection with restraint (and which have no adequate security rationale), could infringe on plaintiff's due process rights. *Johnson ex rel. Johnson v. Brelje*, 701 F.2d at 1209. *See also Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). Total body restraint is a severe intrusion that may defeat constitutional challenge only in limited circumstances defined by professionally approved mental health standards. If nonprofessional prison employees arbitrarily and without good reason (such as safety) preempt the exercise of judgment by professionals, they risk violation of the due process rights of prisoners. *Brelje*, 701 F.2d at 1209.

## II.

 Plaintiff also claims that his rights under the eighth amendment were violated.[4] The eight amendment protects

---

**3.** Plaintiff makes no allegation that the restraints were intended to punish him for wrongdoing. Thus, we have no occasion to consider whether total bodily restraint would violate the eighth amendment. when used by prison officials as a form of punishment. *See Lojuk v. Quandt*, 706 F.2d 1456, 1464 (7th Cir.1983). *See also Stewart v. Rhodes*, 473 F.Supp. 1185, 1190–93 (S.D. Ohio 1979) (invalidating the use of bodily restraints as a disciplinary measure).

**4.** The record contains a copy of A.R. 842, the Illinois regulation dealing with the use of therapeutic restraints on prisoners. It is important to note that violations of this rule cannot form the basis of § 1983 liability because that statute exists to protect against the deprivation of federal rights. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3020 & n. 12, 82 L.Ed.2d 139 (1984).

The regulation, on the other hand, sets out the appropriate procedures to be followed as a matter of *state law.* As such, the Constitution does not necessarily require that it be strictly followed. The appropriate constitutional standards are a matter of federal law. *See Caruth v. Pinkney*, 683 F.2d 1044, 1052 (7th Cir.1982). Nonetheless, the regulation may provide some evidence of the existing professional norms to be applied in determining what is constitutionally adequate. For example, A.R. 842(II)(C) provides:

Under normal circumstances, the use of therapeutic restraint measures may be prescribed only by an institutional physician or psychiatrist based upon his or her personal examination of the resident. The prescription for such restraint measures shall indicate the pur-

prisoners from, *inter alia*, (1) wanton infliction of pain, *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), (2) deliberate indifference to serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), and (3) shocking prison conditions, *Rhodes v. Chapman*, 452 U.S. 337, 345–47, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981). The first two possibilities need not detain us long. Plaintiff asserts that the restraints were carelessly applied in such a way as to cause abrasions, bruises and restricted blood flow. This allegation of carelessness and minor discomfort does not state a claim under the eighth amendment, which prohibits "wanton infliction of pain" by prison officials. *See Soto v. Dickey*, 744 F.2d 1260, 1269 (7th Cir.1984); *Little v. Walker*, 552 F.2d 193, 197 (7th Cir.1977). Similarly, plaintiff has no basis to claim that prison officials displayed deliberate indifference to his serious medical needs. He was treated for his rash with calamine lotion and given Darvon for his headaches.[5] While the treatment was apparently not as prompt as one in the plaintiff's position might have wished, the fact that he was treated generally defeats a claim of deliberate indifference. *Compare Wellman v. Faulkner*, 715 F.2d 269, 272–73 (7th Cir.1983) (finding deliberate indifference where plaintiff's demonstrated "repeated examples of negligent acts" and "systematic and gross deficiencies" in staffing, facilities and procedures). Further, there is no indication that plaintiff's complaints reflected serious medical needs.

 On the other hand, plaintiff's allegations that he was subjected to cruel and unusual conditions of confinement raise more serious questions. Plaintiff asserts that he was deprived of exercise, a shower and clothing except for his underwear. (The temperature of the room is not disclosed and it is unclear whether plaintiff was given blankets). Plaintiff further asserts that he was forced to eat with his fingers while sitting next to his own two-day old urine, which was held in a urinal pitcher. Plaintiff has made uncontroverted allegations of conditions that are sufficiently disturbing to survive a motion for summary judgment. Because the eighth amendment draws its meaning from the evolving standards of decency in a maturing society, there is no fixed standard to determine whether conditions are cruel and unusual. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Conditions that are not cruel and unusual under contemporary standards are not unconstitutional. *Id.* at 347, 101 S.Ct. at 2399. However, mere characterization of an act or condition as "treatment" does not insulate it and the circumstances that surround it from eighth amendment scrutiny. *See Lojuk v. Quandt*, 706 F.2d 1456, 1464 (7th Cir.1983). Nor would the fact that plaintiff was properly restrained justify subjecting him to unconscionable conditions of restraint. *McCray v. Burrell*, 516 F.2d 357, 369 (4th Cir.1975) (holding that a prisoner's suicidal tendencies did not justify placing him naked in a barren cell without blankets, with nowhere to sleep or sit except bare concrete and only an encrusted hole in the floor for a toilet). In light of the eighth amendment precedents, plaintiff's allegations concerning the conditions of his restraint are sufficient to warrant further examination. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 345–52, 101 S.Ct.

---

pose, the clinical justification for the measure of control, and the length of time that the restraint measures are to be imposed, not to exceed 24 hours.
A.R. 842(II)(F) states:
No therapeutic restraint order shall be valid for more than 24 hours. If further restraint is required, a new prescription must be issued by the institutional physician or psychiatrist.

**5.** We recognize that these conditions might not have developed had plaintiff not been tied down and thus disabled from grooming himself. The associated discomfort could affect the calculation of damages should plaintiff prove that his restraint was unjustified. On the other hand, these alleged injuries, to the extent that they were the unintended result of a proper order of restraint, do not constitute an independent basis for relief.

2392, 2398–2402, 69 L.Ed.2d 59 (1981); *Smith v. Fairman,* 690 F.2d 122, 123–26 (7th Cir.1982). *Spain v. Procunier,* 600 F.2d 189, 197–98 (9th Cir.1979) (invalidating the routine use of handcuffs, waistchains, leg manacles and neck chains on prisoners when moving outside the prison adjustment center). *Cf. also Stewart v. Rhodes,* 473 F.Supp. 1185, 1190–93 (S.D. Ohio 1979) (finding that conditions surrounding four-way restraint of prisoners as a disciplinary measure outside the control of medical personnel violated the eighth amendment).

 Finally, plaintiff alleges injuries that are collateral to his confinement. For example, plaintiff indicates that he was unable to prepare for a disciplinary hearing and that his job assignment, pay, college attendance and veteran's educational benefits were revoked as a result of his being found guilty of certain infractions. Assuming that plaintiff could properly claim a protectable liberty or property interest in those benefits, *see Garza v. Miller,* 688 F.2d 480, 484–86 (7th Cir.1982); *Stringer v. Rowe,* 616 F.2d 993, 996–97 (7th Cir.1980), prison officials can properly take them away only after a disciplinary hearing that comports with due process. *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir. 1983); *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.1983). But plaintiff does not complain of the hearing procedures themselves; thus, any deficiencies in that regard do not appear to establish an independent basis of liability. And there is no indication that plaintiff asked for additional time to prepare for the hearing although a prison regulation allows him to make such a request. Accordingly, his claim of inadequate preparation time must fail.

 Similarly, plaintiff alleges that he was denied access to mail and deprived of the opportunity to practice his religion. However, the precedents involving such rights have recognized that they are subject to limitations for prisoners held in special status. *See, e.g., Procunier v. Martinez,* 416 U.S. 396, 412 n. 12, 94 S.Ct. 1800, 1811 n. 12, 40 L.Ed.2d 224 (1974); *Sweet v. South Carolina Department of Correc-*tions, 529 F.2d 854, 863–64 (4th Cir.1975), (en banc). Given that plaintiff was restrained for no more than nine days, we cannot say that deprivation of mail and access to religious practice, under the limited circumstances in which restraint is proper, violated these recognized substantive rights. On the other hand, if the restraint is found to have been improper, the resulting deprivation of these recognized interests can be included in the calculation of damages, if any.

The decision of the district court is RE-VERSED and REMANDED for further proceedings consistent with this opinion.

CUMMINGS, Chief Judge, concurring.

I agree with Judge Cudahy's convincing opinion except in one respect. In Part II, the opinion concludes that the abrasions, bruises and restricted blood flow caused by the restraints do not state a claim under the Eighth Amendment. I would prefer that those claims be explored on remand to determine whether they caused more than "minor discomfort," thus leading to liability.