Katherine **LANE**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 4040.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 27, 1964.

Cooper & Cooper (C. D. Cooper), Norfolk, Va., for plaintiff.

C. V. Spratley, Jr., U. S. Atty., Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

Plaintiff, the wife of a member of the United States Navy on active duty and a dependent entitled to medical care at facilities maintained by the Armed Forces of the United States, entered a government hospital at Dow Air Force Base, Maine, on March 15, 1962, following preliminary examinations indicating a presumptive diagnosis of Baker's cyst on the *left* knee. She signed a consent authorizing an exploratory operation on the *left* knee. On March 16, 1962, an orthopedic surgeon, holding the rank of captain in the United States Air Force, operated on plaintiff's *right* knee without her knowledge and consent and, upon ascertaining his obvious error, closed the incision and, during the same operative procedure, then explored the *left* knee. Plaintiff was discharged from the hospital on March 27, 1962, as ambulatory.

The principal contention advanced by way of defense is that, since the operation on the right knee was unauthorized, plaintiff has no right of recovery under the Federal Tort Claims Act as the particular act constituted an assault and battery which is an excluded provision under the act, 28 U.S.C. § 2680(h). In support of this position, defendant relies upon Moos v. United States, 8 Cir., 225 F.2d 705, which is a case directly in point where plaintiff entered a Veteran's Hospital for an authorized operation on his right leg and hip and the surgeon mistakenly operated on the left leg and hip. The United States Court of Appeals for the Eighth Circuit held that such an act constituted assault and battery under Minnesota law, and fell within the exclusionary provision of the Federal Tort Claims Act.[1]

With deference to the Eighth Circuit and with full realization that the Fourth Circuit may agree, it is the opinion of this court that the Moos case was incorrectly decided. The legislative history touching § 2680(h) does not precisely deal with the question but it at least suggests the belief that Congress wished to avoid exposure to claims grounded upon the impulsive and "hot-headed" actions of employees, even though acting within the apparent scope of their employment, wherever such actions would ordinarily be considered "private acts."

1. Under 28 U.S.C. § 2680(h) it is specifically provided that the right of recovery under the Federal Tort Claims Act shall not apply to "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

The defendant contends that "intent" is the controlling factor and, since the surgeon in the instant case intended to operate upon the *right* knee (even though the written authorization and existing medical records plainly revealed that the complaints were to her *left* knee) an assault and battery was committed. Expressing grave doubts that Congress ever intended to exclude instances of "technical" assaults when clearly coupled with proven acts of negligence, it is apparent that, if the defendant's contention is upheld, there will be many instances involving negligence in the operation of motor vehicles wherein a driver of a government vehicle intentionally travels on the wrong side of a highway in reckless disregard of the rights of others, or intentionally cuts the corner at an intersection where a pedestrian is crossing, and hundreds of like situations, in all of which the United States could assert the exclusionary provision of assault and battery. As one member of Congress indicated in the course of hearings on the subject, the purpose of the exclusion was to protect the United States from acts of its employees who, in a fit of temper, proceeded to hit a party.

■■ The Moos opinion enters into no discussion of congressional intent. It rests upon the bare statement that the situation there presented constituted assault and battery under the law of Minnesota. The law of Maine controls the instant case and, while we do not have any controlling authority touching upon the particular point, the general rule seems to be that such an act by a surgeon during the course of an operation is a "technical" assault and battery.[2] Moreover, as stated in Stepp v. United States, 4 Cir., 207 F.2d 909, exceptions as stated in the Federal Tort Claims Act must be interpreted under the general law rather than under some peculiar interpretation of the state.

■ The operating surgeon did not testify as to his intent. Obviously he intended to operate upon the knee which had been the subject of prior complaint and examination. By reason of sheer carelessness the surgeon did not look at the record before performing the operation. The negligence was continuing and did not lose its identity merely because the ultimate injury was the combined result of negligence and a "technical" assault and battery. Standing alone, however, if the claim arose out of negligence and assault and battery (as contemplated by Congress), the action could not be maintained. United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

It cannot be seriously contended that the operating surgeon "intended" to operate on the wrong knee. Nor can this Court believe that the exclusionary provision of § 2680(h) contemplates the so-called "technical" assault and battery. Aside from the Moos decision there is very little case law on the subject. In United States v. Taylor, 6 Cir., 236 F.2d 649, cert. granted, 352 U.S. 963, 77 S.Ct. 364, 1 L.Ed.2d 320, motion to remand denied, 353 U.S. 956, 77 S.Ct. 862, 1 L.Ed.2d 907, cert. dismissed per stipulation, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19, the defense of assault was interposed where a low flying plane at an accelerated speed crashed and plaintiffs were injured by burning gasoline. Judge Stewart (now Mr. Justice Stewart), after referring to Moos and Stepp, had this to say with respect to the exclusionary clause, 28 U.S.C. § 2680(h):

"The evidence is substantially uniform that both passes made by the plane were at nearly level flight, at a very low altitude above the courthouse. No witness stated that he took shelter or saw anyone else do so. No witness stated that he was in fear for his personal safety. Several in fact stated that they went ouside or to a window to get a better view. It conceivably could constitute an assault for the pilot of an airplane to dive steeply toward persons on the ground causing them

---

2. 6 C.J.S. Assault and Battery § 8, p. 801; 41 Am.Jur., Physicians and Surgeons, § 108, p. 220.

to feel they were in immediate danger of being hit, but the record here warrants no such finding, nor any other finding that would establish even a tenuous case of assault and battery."

This is but a typical illustration of the contended strained construction of § 2680(h). It could conceivably cover any striking with an automobile, intentionally or through recklessness. The key to the question lies in whether there was an *intentional "wrong"*. In United States v. Hambleton, 9 Cir., 185 F.2d 564, an Army Criminal Investigator interviewed plaintiff for three and one-half hours. He adopted no physical force but did use emotionally distressing methods, including questions on delicately personal subjects not directly connected with the investigation. One week later the plaintiff became psychotic and was sent to a sanitarium. In considering § 2680 (h), with especial reference to intentional assaults, the court said:

> "The fact that most other types of intentional torts are listed in the same excepting provision is persuasive that Congress must have intended to include this type of wrong in the same group of excepted torts. The absurdity of any other view would be manifest, if we were to hold that if when he used his frightening words Anderson [the criminal investigator] had pointed a pistol at the plaintiff, then the United States would not be liable, but that if he had displayed no pistol, the United States could be held."

Holding that there was no *intentional wrongful act* on the part of the operating surgeon in cutting into the wrong knee, the Court concludes that § 2680(h) is inapplicable. The government concedes that if the surgeon had operated on the *left* knee (the one which was properly the subject of the operation) and, during the course of the operation, the surgeon had cut the muscles or ligaments with resulting damage, the plaintiff could then properly assert her claim for malpractice as it would not, in the strict sense of the word, be an assault and battery. Certainly this state of confusion was not within the minds of our lawmakers in enacting § 2680(h).

The ultimate interpretation must rest with the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court. While reluctant to disagree with the Eighth Circuit, this Court cannot believe that Congress ever intended to apply the exclusion to the factual situation here presented.

Fortunately the damages are not substantial. Plaintiff does not complain as to the treatment rendered to her *left* knee at Dow Air Force Base and thereafter at the Naval Hospital in Portsmouth, Virginia. The operation on her *right* knee involved an "S" type incision on the back of the knee, but no muscles or ligaments were cut as the usual process of an initial incision only required cutting the tissues and laying them open, whereupon the surgeon was able to observe any defect in the knee. The scar, approximately 3½ inches in length, remains on the back of the *right* knee. There is apparently no other deformity and there were no complications such as swelling, atrophy, or circulatory disturbances. Plaintiff subjectively has occasional complaints relating to a slight "aching" in the knee. Of course, the immediate after-effects from the negligent operation were not so pleasant as the particular area was vulnerable from the standpoint of soreness and the tissues remained sore for a period of about six weeks following such an operation and, understandably, there was a temporary resulting weakness for a like period.

The Court attaches no significance to plaintiff's subsequent treatments of the *left* knee. Undoubtedly she has had continuing trouble and, on January 29, 1963, she underwent a second operation on the left knee. Her resignation from her place of employment in Maine was effective shortly prior to moving to Virginia. Her loss of wages and extra time spent in the hospital as a result of the negligent operation was minimal. Without minimizing her pain and suffer-

ing, as well as her mental anguish, which may be properly attributed to the negligent operation on the *right* knee, the Court is of the opinion that plaintiff is entitled to recover the sum of $3500.00.

A judgment order will be prepared and presented in accordance with this memorandum opinion. Counsel for plaintiff will be allowed the sum of $700.00 to be paid from, but not in addition to, the aforesaid sum of $3500.00. Costs will be assessed against the defendant. The order will direct the Clerk to forward a certified copy of said judgment order to the General Accounting Office, Washington, D. C., and, in the event of appeal, interest will run from the date of judgment.