**Karen WOODS and Gary Woods, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Department of the Army, Letterman Army Medical Center, Defendants-Appellees.**

No. 81–4609.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 15, 1982.

Re-submitted Aug. 25, 1983.

Decided Nov. 28, 1983.

---

**1452**

Charles D. Maurer, Jr., Maurer, Higginbotham & Harris, San Francisco, Cal., for plaintiffs-appellants.

John F. Barg, Asst. U.S. Atty., Richard S. Gilardi, San Francisco, Cal., for defendants-appellees.

Before WALLACE and FERGUSON, Circuit Judges, and GRANT,* Senior District Judge.

GRANT, Senior District Judge:

█ Plaintiffs, in this malpractice action against the United States,[1] allege personal injuries and mental pain and suffering sustained by Karen Woods as a result of the alleged negligent administration of a cervical myelogram during which the physicians negligently failed to aspirate all of the contrast medium (Pantopaque) used, and the residual Pantopaque is alleged to have resulted in brain damage.

---

* Honorable Robert A. Grant, United States Senior District Judge, Northern District of Indiana, sitting by designation.

1. Plaintiffs also named the Department of the Army and Letterman Army Medical Center as additional defendants. However, the United

The defendant denied any negligence whatsoever and denied that any negligence proximately caused injury to the plaintiffs.

The District Court had subject matter jurisdiction under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671 et seq.) and jurisdiction on this appeal is provided by 28 U.S.C. § 1291. The parties consented to trial before a Magistrate pursuant to 28 U.S.C. § 636(c), and this case proceeded to trial to the court without a jury pursuant to 28 U.S.C. § 2402.

Following trial to the Court, Magistrate Langford entered his Memorandum Decision containing extensive findings of fact and conclusions of law, among which were the following:

> Considering all of the evidence and testimony the Court finds that the Plaintiffs have failed to prove by a preponderance of the evidence that there was any negligence in the administration of the cervical myelogram to Karen Woods. The Court finds as a matter of fact that said myelogram was expertly performed, free of negligence and within the required medical standard of care.
>
> The Court further finds that the Plaintiffs have failed to establish by a preponderance of the evidence that intracranial Pantopaque can cause organic seizures or epilepsy.

  *   *   *   *   *   *

> The Court further finds that the weight of the evidence presented establishes that there is no medical evidence that intracranial Pantopaque can cause or result in organic seizures or epilepsy. Accordingly, the Court further finds that there was no professional negligence in failing to advise Karen Woods that one of the risks of the myelographic procedure was the possibility of organic seizures subsequently occurring.

States is the only proper defendant in an action brought under the Federal Torts Claims Act. *United States v. Gilman,* 347 U.S. 507, 509, 74 S.Ct. 695, 696, 98 L.Ed. 898 (1954); *Williams v. United States,* 405 F.2d 951, 954 (9th Cir.1969). Plaintiffs apparently do not dispute this.

(Magistrate's Memorandum Decision, p. 15, 16). The lower court's findings should be allowed to stand unless clearly erroneous. Fed.R.Civ.P. 52(a).

■ Plaintiffs offered the testimony of three doctors, one of whom suggested that retained Pantopaque *could* have caused seizures. Two other doctors testified that they accepted that theory but plaintiffs failed to provide any empirical evidence to show that such hypothesis was anything more than a theory. Following a review of the record, we hold that the Court's finding that plaintiffs had failed to prove that intracranial Pantopaque caused or can cause or result in organic seizures was not clearly erroneous. Since plaintiffs have failed to prove that the use of Pantopaque, or the manner in which the Pantopaque was administered, was the proximate cause of any damages sustained, we need not address the issue of informed consent concerning any such possible side effects from its use.

### The Applicability of Section 2680(h) of the Federal Tort Claims Act

■ Mrs. Woods also seeks damages allegedly sustained when Dr. Lee, a medical resident, finding her behaving in a bizarre manner, decided to use "shock therapy" to determine whether her "episode" was organic or psychogenic. He "grabbed her around the neck" and shouted profanities at her. The Magistrate's decision states:

> Several of the doctors who testified during the course of the trial testified, without exception, that they did not believe Dr. Lee's actons [sic] to be within the acceptable bounds of propriety insofar as treating such a patient.

(Magistrate's Memorandum Decision, p. 27). Magistrate Langford concluded that these acts constituted an assault and battery [2] within the scope of 28 U.S.C. § 2680(h) and were thus barred by the doctrine of sovereign immunity.

**2.** Citing California law on the definition of battery, appellee argues that the substantive law of California applies. We are here concerned with a question of Federal Court Jurisdiction within the limited waiver of the government's sovereign immunity evidenced by the Federal

The Eighth Circuit, in *Moos v. United States,* 225 F.2d 705 (8th Cir.1955), was faced with a challenge to Federal Tort Claims Act jurisdiction in a case wherein the surgeon had mistakenly operated on the patient's wrong leg. That Court held that that action was barred as an assault and battery within the meaning of Section 2680(h).

■ However, we believe that the better view is expressed in *Lane v. United States,* 225 F.Supp. 850 (E.D.Va.1964). That case provides a thorough analysis of Section 2680(h) and of its legislative history. In the case before us, Dr. Lee testified that he did not use the "shock therapy" procedure to abuse Mrs. Woods, and that he had used this same therapy on other patients. Thus, in Dr. Lee's mind, what he was doing was diagnostic and a form of treatment to see if he could determine whether Karen Woods' seizures were organic or psychogenic. We adhere to the holding in *Lane* that where, as here, there was no intentional wrongful act on the part of Dr. Lee, Section 2680(h) is inapplicable. See *Lane* at p. 853.

Judge Hoffman's opinion in *Lane* has been quoted with approval in *Fontenelle v. United States,* 327 F.Supp. 801 (S.D.N.Y. 1971) wherein that Court stated:

> While neither *Moos* nor *Lane* are applicable to this case since the plaintiff consented to a particular type of surgery which was performed on the indicated part of his anatomy, the court agrees with *Lane* that unless there was an intentional wrongful act on the part of the surgeon, the operation did not constitute an assault and battery on the plaintiff.

Another Court, in *Hernandez v. United States,* 465 F.Supp. 1071, 1074 (D.Kan.1979), in discussing the *Moos* and *Lane* cases, had reason to say:

> The *Lane* view is generally recognized as the more reasonable approach.

Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671 *et seq.* The issue, therefore, is not what constitutes a battery within the meaning of California law, but within the meaning of § 2680(h) of the Act.

*See also Jablonski by Pahls v. United States,* 712 F.2d 391 at 395 (9th Cir.1983 (as amended)). There, Judge Wallace stated: "Meghan's [plaintiff's] suit is based on the negligence of government employees that could have been prevented by an exercise of due care. We hold that Meghan's suit is not precluded by subsection 2680(h)." We conclude that the Magistrate erred as a matter of law in holding that Dr. Lee's treatment of Karen Woods was barred by Section 2680(h) of the Act.

In conclusion, the judgment of the Magistrate is affirmed except that his ruling on the applicability of Section 2680(h) of the Federal Tort Claims Act (28 U.S.C. §§ 2671 *et seq.*) is reversed and this cause is remanded to the District Court for further proceedings with reference to the alleged actions of Dr. Lee. Defendant will pay costs.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the finding by the magistrate that the Woods failed to prove that the Pantopaque proximately caused the brain damage and organic seizures is not clearly erroneous. I agree, therefore, that we need not reach the question of whether malpractice occurred in the myelogram procedure.

I disagree with the majority that the claim involving Dr. Lee should be reversed. The magistrate found that the Woods did not prove that the acts of Dr. Lee proximately caused the damage claimed by the Woods. The Woods have not demonstrated that this finding is clearly erroneous.

As the magistrate pointed out, several doctors testified that the action of Dr. Lee constituted malpractice. But that is not the dispositive question before us. The magistrate found that the Woods failed to prove that Lee's acts proximately resulted in any damage. Proof as to this issue turned largely on the credibility of Mrs. Woods. The magistrate found she was not a credible witness—he did not believe her on this issue. Credibility is a determination to be made by the finder of fact and this record does not support overruling his assessment. A plaintiff may not prevail on a claim without proving proximately resulting damage.

Therefore, I conclude that the magistrate did not clearly err in finding a failure to prove proximately resulting damage. Thus, I would affirm on this claim and would not reach the issue of whether the action of Dr. Lee constituted an assault and battery under section 2680(h) of the Federal Tort Claims Act or whether his acts constituted malpractice.