**Michael FOSTER, Plaintiff,**

v.

**Francis McGRAIL and John Lopes, Defendants.**

**Francis McGRAIL, Counterclaimant,**

v.

**Michael FOSTER, Counterdefendant.**

**Civ. A. No. 91–13282–REK.**

United States District Court, D. Massachusetts.

Jan. 25, 1994.

---

Harold I. Resnic, Steven D. Resnic, Springfield, MA, for plaintiff.

Stephen G. Dietrick, Mass. Dept. of Corrections, Boston, MA, for defendants.

## OPINION

KEETON, District Judge.

### I.

This case arises principally from an incident of June 11, 1991 during which a correctional officer used "excessive force" against

an inmate of an exceptionally secure cell block of the most secure correctional institution of the Commonwealth of Massachusetts.

"Excessive force" is used throughout this Opinion strictly in the sense that the force used "was more force than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution." Verdict, answer to Question 2. The correctional officer did not act for an impermissible purpose, id., answer to Question 1, and did not act maliciously and sadistically for the very purpose of causing harm, id., answer to Question 2(b).

After a jury trial in which a special verdict form with seven questions (and subparts) was submitted to the jury (see Part III, below), the court concluded that the jury findings warranted judgment for the defendants on all counts, and judgment for the counterclaimant on one count of battery. After receiving the verdict, the court ordered judgment accordingly.

Plaintiff has now filed a Motion to Alter or Amend the Judgment and Memorandum in Support (Docket Nos. 25, 26, filed November 15, 1993), to which defendants have filed an Opposition (Docket No. 27, filed November 26, 1993). Plaintiff has filed a Reply Brief (Docket No. 28, filed December 4, 1993).

## II.

Only after the jury verdict was received did it become possible to state, with the precision of the first paragraph of this Opinion, the factual nature of this case.

When the case was called for trial on October 25, 1993, the claims and defenses alleged in the complaint, the answer of the defendants, and the counterclaim of one of the defendants, raised in classic pattern a complex array of disputable factual allegations and disputable issues of law—state tort law, constitutional tort law (federal and state), and civil rights law (federal and state).

Some issues of fact and law were eliminated by the strategic choices of the parties as the case proceeded through trial and through the fashioning of the verdict form and charge to the jury. Even so, the law defining what factual disputes are relevant to the claims and defenses remaining for submission to the jury included issues of federal and state law as yet unsettled by precedent. In these circumstances, with the cooperation of counsel, the court fashioned a verdict form aimed at obtaining all findings of fact that might be essential to determining the final outcome of the case, regardless of how disputable issues of law might finally be resolved. Thus, if a higher court resolves one or more of the disputable legal issues in a way contrary to the trial court's ruling, the higher court might simply order an alteration or amendment of the judgment rather than ordering a new trial. Because of the inevitable expense and delay before final disposition of this dispute, the possibility of a new trial is not attractive to any party or to the court.

Also, with the acquiescence of counsel, the court advised the jury of the uncertainty about some of the applicable rules of law and of the need for the jury to answer each of the questions as directed by the verdict form. Charge to the Jury, p. 17.

The findings of the jury mooted some of the disputable issues of law but made it necessary for the court to decide others to determine the judgment. Phrased in non-doctrinal terms, the central questions the court had to consider, and now reconsiders, are these:

FIRST. Under state as well as federal law, to succeed in a claim against a public officer based on the use of excessive force, must the claimant prove more than negligence? That is, must the claimant's proof satisfy a legal test for accountability that depends on a finding that the public officer's conduct was more blameworthy than negligence?

SECOND. If Yes, will proof of something more than negligence but less than malicious and sadistic use of force for the very purpose of causing harm be sufficient?

THIRD. For whom should the court order judgment if

(a) the parties, with the court's approval, forego all contentions that some other legal test for accountability applies, submit to the jury only

(i) claims based on use of force for an impermissible purpose,

(ii) claims based on negligence, and

(iii) claims based on malicious and sadistic use of force for the very purpose of causing harm, and

(b) the jury finds negligence but neither use of force for an impermissible purpose nor malicious and sadistic use of force for the very purpose of causing harm?

I conclude in Part IV below that the answer to the FIRST question is YES. Regardless of the doctrinal labels the claimant applies to his theory of a prima facie claim and theories of defense (including privilege and qualified immunity), something more than proof of negligence is required under both federal and state law to support the claim.

Sources of authority to which trial lawyers and a trial judge must look for guidance do not supply an answer to the SECOND question, under either federal law or state law. Instead, trial lawyers and the trial judge are confronted with an array of conflicting signals in constitutional provisions, statutes, and precedents. I conclude, however, that I do not need to decide whether proof of something more than negligence but less than malicious and sadistic use of force is sufficient to support the claims made by plaintiff in this case because, as explained in Part IV below, plaintiff decided not to base his claims on an intermediate test for accountability somewhere between negligence and malicious and sadistic conduct. Having made this election as part of his trial strategy, plaintiff is not entitled to assert now any claim based on an intermediate test.

The THIRD question arises from the uncertainty about the test for accountability to be applied in cases involving federal and state torts. The uncertainty presents serious problems of strategy for trial counsel on both sides, and serious issues of trial management for trial lawyers and the trial judge. In these circumstances, charging a jury to return a general verdict runs a very high risk of reversal and new trial because there are so many unsettled questions of law as to which a higher court may decide that the trial court erred. Often both parties, well counseled by their trial attorneys, will choose to forego some alternative contentions and focus the case more sharply on their respective preferred positions. The parties in this case made such a choice.

I conclude, in the present case, for reasons explained in this Opinion, that the answer to the THIRD question is judgment for defendants. Plaintiff chose to try the case on just three alternative grounds—use of force for an impermissible purpose, use of more force than a reasonable custodial officer would have thought necessary in like circumstances, and use of force maliciously and sadistically for the very purpose of causing harm. Plaintiff failed to persuade the jury on the first and third grounds (impermissible purpose and malicious and sadistic purpose), and I conclude that the law does not support liability on plaintiff's second ground (negligence).

### III.

The jury returned a verdict as follows:

1. On June 11, 1991, did the defendants, acting together, or Francis McGrail, acting separately, use force for an impermissible purpose against the plaintiff, Michael Foster?

 (a) Defendants acting together: _____ YES ___X___ NO

 If "YES," did the defendants apply the force maliciously and sadistically for the very purpose of causing harm?

 _____ YES _____ NO

 (b) Francis McGrail, acting separately: _____ YES ___X___ NO

 If "YES," did Francis McGrail apply the force maliciously and sadistically for the very purpose of causing harm?

 _____ YES _____ NO

2. On June 11, 1991, did the defendants, acting together, or Francis McGrail, acting separately, use more force against Michael Foster than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution?

(a) Defendants <u>acting together:</u> _____ YES <u> X </u> NO

If "YES," did the defendants apply the force maliciously and sadistically for the very purpose of causing harm?

_____ YES _____ NO

(b) Francis McGrail, acting separately: <u> X </u> YES _____ NO

If "YES," did Francis McGrail apply the force maliciously and sadistically for the very purpose of causing harm?

_____ YES <u> X </u> NO

**IF YOU ANSWERED "YES" TO ANY PART OF QUESTION 1(b) or 2(b), THEN ANSWER QUESTION 3; OTHERWISE, DO NOT ANSWER QUESTION 3.**

3. If you answered "YES" to any part of question 1(b) or 2(b), did John Lopes fail to make the efforts that a reasonable person in his position would have made to stop Francis McGrail's use of impermissible or excessive force against Michael Foster that occurred in Lopes' presence?

<u> X </u> YES _____ NO

If "YES," did John Lopes choose this course of conduct maliciously and sadistically for the very purpose of causing harm?

_____ YES <u> X </u> NO

**IF YOU ANSWERED "YES" TO ANY PART OF QUESTION 1 OR QUESTION 2, THEN ANSWER QUESTIONS 4 AND 5; OTHERWISE, DO NOT ANSWER QUESTIONS 4 AND 5.**

4. What amount, if any, do you find would be required to compensate fairly and reasonably for harm caused to Michael Foster by the use of force against him?
 (a) Answer only if you answered YES to any part of 1(a) or 2(a):
 What amount, if any, do you find against defendants <u>acting together?</u>

 $ _____ compensatory damages

 $ _____ prejudgment interest, if any

 (b) Answer only if you answered YES to any part of 1(b) or 2(b):
 What amount, if any, do you find against Francis McGrail, acting separately?

 $ <u>2,500.00</u> compensatory damages

 $ <u>150.00</u> prejudgment interest, if any

5. What amount, if any, do you award as punitive damages? If you do not award punitive damages, mark the blank with a zero.
 (a) Answer only if you answered YES to any part of 1(a) or 2(a):
 What amount, if any, do you find against defendants <u>acting together?</u>

 $ <u>0</u> punitive damages

 (b) Answer only if you answered YES to any part of 1(b) or 2(b):
 What amount, if any, do you find against Francis McGrail, acting separately?

 $ <u>300.00</u> punitive damages

 (c) Answer only if you answered YES to any part of Question 3:
 What amount, if any, do you find against John Lopes, for failing to act?

 $ <u>300.00</u> punitive damages

**ANSWER QUESTIONS SIX AND SEVEN.**

6. On June 4, 1991, did Michael Foster commit a battery upon Francis McGrail?

<u> X </u> YES _____ NO

If YES:
What amount, if any, do you find would be required to compensate fairly and reasonably for harm caused to Francis McGrail by the battery?

$ <u>275.00</u> Compensatory damages

7. On June 11, 1991, did Michael Foster commit a battery upon Francis McGrail?

_____ YES __X__ NO

If YES:

What amount, if any, do you find would be required to compensate fairly and reasonably for harm caused to Francis McGrail by the battery?

$_____ Compensatory damages

---

The jury's answers bearing upon plaintiff's claims establish the following facts:

(1) Neither defendant McGrail acting separately nor defendants McGrail and Lopes acting together used force for an impermissible purpose against plaintiff on June 11, 1991.

(2) Defendants acting together did not use more force against plaintiff, on June 11, 1991, than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution.

(3) Defendant McGrail, acting separately, did use more force, on June 11, 1991, than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution.

(4) However, defendant McGrail did not apply that force maliciously and sadistically for the very purpose of causing harm.

(5) Defendant Lopes failed to make the efforts that a reasonable person in his position would have made to stop defendant McGrail's use of excessive force against plaintiff that occurred in Lopes' presence.

(6) However, defendant Lopes did not choose this course of conduct maliciously and sadistically for the very purpose of causing harm.

### IV.

For the reasons explained below, I conclude that the Final Judgment entered on November 3, 1993 is correct and that plaintiff's motion to alter or amend that judgment must be denied.

### A. *Federal Law Claims*

Plaintiff, as an inmate of a state correctional institution, asserted federal law claims grounded on alleged violations of the "cruel and unusual punishments" clause of the Eighth Amendment (as incorporated into the due process clause of the Fourteenth Amendment of the Constitution of the United States, thus applying to state correctional officers). In order to prevail against a defendant correctional officer, plaintiff must first satisfy the prima facie elements of his claim, and then must defeat defendant's claim of "qualified immunity."

### 1. *Prima Facie Claim Under The Eighth Amendment*

The requirements for proving a claim under the Eighth Amendment were recently clarified by the Supreme Court in *Hudson v. McMillian*, —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Court reviewed Eighth Amendment jurisprudence and concluded:

> [W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson*, —— U.S. at ——, 112 S.Ct. at 998 (citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Unless the phrases "good faith effort to maintain or restore discipline" and "maliciously and sadistically to cause harm" are used in some special sense, there is a very large undistributed middle between them. Perhaps it could be argued the Court's failure to advert to any rule or rules to be applied to conduct ranging from one extreme to the other of an undistributed middle implies that the Court expected lower courts to place all conduct within one or the other of the two categories—by ruling, for example, that anything not found to be done "maliciously and sadistically to cause harm" is to be treated as "good-faith effort." Neither the text of this passage itself, however, nor anything in the remain-

der of the Court's opinion, manifests a purpose to use the two contrasting phrases in such an unusual way, with a meaning so different from ordinary usage. For this reason, I conclude that it is more appropriate to infer that the Court deliberately did not address whether an intermediate test of accountability—something less than malicious and sadistic conduct—might also suffice for an Eighth Amendment claim.

A second reason for drawing this inference is that, in a case arising under the due process clause, the Court explicitly reserved for future decision a rather similar question about the range of conduct between negligently and purposefully causing injury (by leaving an obstruction on a stairway in a jail). *Daniels v. Williams*, 474 U.S. 327, 334 n. 3[, 106 S.Ct. 662, 666 n. 3, 88 L.Ed.2d 662] (1986) (declining to address "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause").

Moreover, in that case the Court added that a state-of-mind element is implicit in the word "deprive" in the due process clause of the Fourteenth Amendment. *Id.* at 330–31, 106 S.Ct. at 664. And, in a more recent decision, the Supreme Court has declared that at least some kind of state-of-mind element is implicit in the word "punishments" in the "cruel and unusual punishments" clause of the Eighth Amendment, and that more than mere negligence on the part of the state official must be proved. *See Wilson v. Seiter*, 501 U.S. 294, ———, 111 S.Ct. 2321, 2323–27, 115 L.Ed.2d 271 (1991).

In the present case, plaintiff and defendant McGrail both acknowledged that on June 11, 1991, defendant McGrail intentionally pinned plaintiff against a wall within the correctional institution, and then forced plaintiff in some manner to the floor; other events, and the exact cause of plaintiff's injury, were disputed. The jury found that on June 11, 1991, defendant McGrail acted negligently, but that no defendant acted maliciously and sadistically or with an impermissible purpose. The jury's findings do not meet the state-of-mind requirement for a claim under the Eighth Amendment. I therefore concluded when ordering judgment, and now conclude again on reconsideration, that plaintiff's federal-law claims fail because plaintiff has not satisfied the prima facie elements of a federal-law claim.

Although it is possible that, when the issue is squarely presented, the Supreme Court will hold that a plaintiff may succeed on an Eighth Amendment claim by proving conduct more blameworthy than negligence but less blameworthy than using force maliciously and sadistically for the very purpose of causing harm, speculation about such an intermediate test of accountability need not detain the court today. During the trial of this case, the court and counsel recognized the possibility of an intermediate test, and the court invited the plaintiff and the defendants to suggest a verdict form for the jury with some intermediate test of accountability between using "more force ... than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution" and using force "maliciously and sadistically for the very purpose of causing harm." Neither the plaintiff nor the defendants asked the court to submit any intermediate test. These were strategic choices by well-counseled parties, in circumstances of unsettled issues of law. From the plaintiff's perspective, one might prefer not to include on the verdict form an array of choices that would increase the risk that, given the option, the jury would choose an intermediate finding rather than plaintiff's preferred malicious-and-sadistic finding. Such a verdict would have presented a risk that final resolution of the legal issues would hold the intermediate finding insufficient to sustain a judgment. Thus, had he elected to submit the intermediate question, plaintiff might have reduced his chances of obtaining a finding that plainly would have supported his claim—a finding that force was used maliciously and sadistically for the very purpose of causing harm.

In the present case, plaintiff's primary strategy at trial was to persuade the jury that defendant McGrail had a grudge against plaintiff growing out of an incident on June 4, 1991, and deliberately used excessive force

on June 11, 1991 for the impermissible purpose of getting back at plaintiff. The jury, however, was not persuaded and found against plaintiff both as to "impermissible purpose" and as to "malicious and sadistic" use of force.

Having made a considered election as part of his trial strategy, plaintiff is not now entitled to assert a claim on some intermediate test of accountability as a ground for altering and amending the judgment.

*Cf. Kavanaugh v. Greenlee Tool Co.,* 944 F.2d 7, 11 (1st Cir.1991) (after court and counsel reviewed special verdict form in detail and counsel did not object, plaintiff "waived" any objection to form despite omission of key element);

*Anderson v. Cryovac, Inc.,* 862 F.2d 910, 918 (1st Cir.1988) (litigant who acceded to the form of a special interrogatory that omitted an important element "will not be heard to complain after the fact"; "to hold otherwise would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy") (internal quotations omitted).

### 2. *Qualified Immunity*

In addition, and as a separate ground for the judgment entered in this case, the court determined that even if it were assumed that the jury findings satisfied the prima facie elements of plaintiff's claim, plaintiff could not prevail because he had failed to overcome qualified immunity.

█ The Supreme Court's current test for qualified immunity was first set out in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982):

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737–38. The Court has since reaffirmed that the defendant's conduct should be analyzed according to an objective, rather than subjective, standard of reasonableness. *See,*

*e.g., Anderson v. Creighton,* 483 U.S. 635, 645, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987) ("*Harlow* ... [requires] an objective inquiry into the legal reasonableness of the official action."); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). If, while performing a discretionary function, the defendant could reasonably have believed that his conduct was lawful at the time, he will be protected from liability by qualified immunity.

█ In this case, the correctional officer had discretion to use force to the extent necessary to maintain order and discipline within the correctional institution, 103 C.M.R. 505.07, and the jury found that he did not use force for any other, impermissible purpose. Although the precise meaning of "discretionary function" as used in *Harlow* is unsettled, it is a far broader concept than one might infer from the choice to use the phrase "discretionary *function*" rather than, for example, the phrase "discretionary *act.*" It might be argued that "discretionary *function*" implies decision-making that invokes weighing public policies, and at a relatively high level of government. Precedents, however, do not support that interpretation. Instead, they support a broader meaning for "discretionary function" that includes not only a high level decision formulating a directive but also lower level administration of the directive, at least when some discretion must be exercised in the administration and enforcement. Indeed, the distinction that has developed in this context may be quite close to the distinction developed, in relation to immunity of municipalities, between "discretionary" and "ministerial" conduct.

*See, e.g., Horta v. Sullivan,* 4 F.3d 2, 15 (1st Cir.1993) ("[I]t would be the rare case indeed where an officer is denied qualified immunity because the officer is found to have engaged in 'ministerial' rather than 'discretionary' conduct. The discretionary function exception in both the Massachusetts and the Federal Tort Claims acts is altogether different from whatever narrow exception may still exist under immunity law for nondiscretionary ('ministerial') conduct.")

I conclude that a correctional officer is performing a "discretionary function" as that term is used in the context of the federal law of qualified immunity, applied in section 1983 cases, when the officer exercises his authority to use *reasonable force for a permissible purpose.*

See, e.g., *Horta* at 11–12 (finding, for purposes of federal law of qualified immunity, that police officer was engaged in discretionary function when making quick decision under municipality's high speed pursuit guidelines);

*Gooden v. Howard County,* 954 F.2d 960, 964 (4th Cir.1992) (en banc) (extending qualified immunity to police officers in mistaken custody case after noting that police officers exercise "what are inescapably discretionary functions replete with close judgment calls");

*Davis v. Scherer,* 468 U.S. 183[, 104 S.Ct. 3012, 82 L.Ed.2d 139] (1984) (for purposes of applying qualified immunity, an official has only discretionary authority when acting under a "law that fails to specify the precise action that the official must take in each instance").

■ The more difficult issue is whether, in the circumstances of record in this case, defendant's conduct was objectively reasonable. On the one hand, the jury found that defendant used more force than a reasonable custodial officer in the same circumstances would have thought necessary. On the other hand, the jury did not find the *purpose* for which defendant used force to be impermissible. It is a reasonable interpretation of these findings, taken together, that defendant could reasonably have believed that his conduct was lawful at the time (the purpose was permissible), and he accidentally or negligently used more force than he should have used. *Cf. Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039 (identifying the relevant inquiry as "whether a reasonable officer could have believed [certain conduct] to be lawful").

I conclude that the doctrine of qualified immunity as applied to these circumstances permits some leeway for mistakes, even negligent mistakes, without a consequence of legal liability.

See *Hunter v. Bryant,* —— U.S. ——, [——,] 112 S.Ct. 534, 537[, 116 L.Ed.2d 589] (1991) (per curiam) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law") (internal quotations omitted).

That is, qualified immunity protects a correctional officer against liability for negligence when, in making a quick decision about how much force to use, the officer must weigh the interests of institutional discipline and order against the interests of an inmate in not having excessive force used against him. For this reason, defendant's conduct was "objectively reasonable" in the circumstances—that is, a reasonable custodial officer could have believed that what he was doing was permissible—and the defendant is protected by qualified immunity.

## B. State Civil Rights Claims Against McGrail

Similarly, plaintiff failed to prove his claims under the Massachusetts Civil Rights Act, Mass.Gen.Laws ch. 12, §§ 11H & 11I, both because he failed to satisfy the prima facie elements of his claim and because he failed to overcome qualified immunity.

Counsel have not cited and I am not aware of any Massachusetts precedent adopting a state-of-mind element for state civil rights claims that is equivalent to the federal "malicious and sadistic" element for a prima facie case under the Eighth Amendment. It is my view, however, that state law will impose at least some heightened requirement beyond negligence—and probably a state-of-mind requirement—as a predicate for liability of a public official for violation of a state constitutional right. This view is supported by analogy both to federal requirements and to state doctrine regarding the extent of privileges and immunities of public officials against *common law* tort claims (see Part IV.C below).

In addition, even if plaintiff succeeded in proving a prima facie claim for a state constitutional violation, he failed to overcome defendant's qualified immunity as established

under state law. The Massachusetts legislature, in enacting the Civil Rights Act, adopted the same standard of immunity for public officials as developed under § 1983 for federal claims. *Duarte v. Healy,* 405 Mass. 43, 537 N.E.2d 1230 (1989); *see also Santiago v. Fenton,* 891 F.2d 373, 386 n. 10 (1st Cir.1989) (noting that federal qualified immunity law applies to the Massachusetts Civil Rights Act). Thus,

> public officials are not liable under the Civil Rights Act for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was "clearly established" at the time.

*Duarte,* 405 Mass at 47, 537 N.E.2d at 1232.

For essentially the same reasons as are stated in the analysis of federal claims, above, plaintiff has failed to overcome the qualified immunity that is part of the state law under *Duarte.*

## C. *State Common Law Claims Against McGrail*

Plaintiff failed to prove his state common law claims (variously referred to as "battery" and "excessive force") against defendant McGrail, even though he satisfied the elements of a prima facie case of the tort of battery. Under Massachusetts law, more than the prima facie elements of a battery must be satisfied in order to succeed on a tort claim against a state official.

### 1. *Exclusive Remedy Incident To Waiver of Sovereign Immunity*

The Massachusetts Tort Claims Act (the "Act"), as amended in 1978, effects a partial waiver of sovereign immunity and provides an *exclusive remedy* under which public employers are liable for an employee's negligent acts performed within the scope of employment:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.... The reme-

dies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim, and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or any personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.

Mass.Gen.Laws ch. 258 § 2.

The statute explicitly states that it does not apply (that is, neither its immunity provisions nor its exclusive-remedy provisions apply) to "any claim arising out of an intentional tort, including assault [and] battery." Mass.Gen.Laws ch. 258 § 10(c). Thus, the exclusive-remedy provisions of the Act do not apply to a claim against an individual employee based on intentional tort.

Plaintiff argues that the Act does not apply to his claims because McGrail committed the intentional tort of battery. Plaintiff is correct to the extent that he has proved the prima facie elements of a battery in this case: it is undisputed that defendant McGrail intended to and did use force against plaintiff without his consent. The question the court must decide, however, is whether fulfilling the prima facie elements of a battery without showing an intent to harm (or a state of mind of knowing that the act would result in a violation of a legally protected right) is sufficient to exclude the claim from the provisions of the Act. Based on Massachusetts precedent, I conclude that more than the prima facie elements of a battery must be shown in order to invoke the intentional tort exception of § 10(c) of the Act. For this reason, the Act applies—including the exclusive-remedy provisions of § 2—and plaintiff's claims are barred.

This same issue was addressed in *Schenker v. Binns,* 18 Mass.App. 404, 466 N.E.2d 131 (1984), a case in which the plaintiff cast a negligence action against a doctor in terms of assault and battery in an attempt to take his claim outside the scope of the Massachusetts

Tort Claims Act. Although acknowledging that plaintiff had satisfied the prima facie elements of a battery, the court held that plaintiff's claims were nevertheless barred by the exclusive-remedy provisions of the Act because plaintiff had failed to show an "intentional wrongful act" by the doctor. *Id.* at 133. Without such an "intentional wrongful act," the plaintiff's claim did not come within the intentional tort exception of § 10(c), and plaintiff's claims against the individual doctor were therefore barred. In support of its reasoning, the court cited Federal cases construing the Federal Tort Claims Act in a similar manner.

> *See, e.g., Lane v. United States,* 225 F.Supp. 850, 852–853 (E.D.Va.1964) (surgeon committed a "technical" assault and battery, but without showing of "intentional wrongful act," plaintiff could not bring suit under intentional tort exception);
>
> *Woods v. United States,* 720 F.2d 1451, 1453 (9th Cir.1983) (requiring "intentional wrongful act" to meet assault and battery exception).

The court concluded:

> It places form over substance to elevate what is essentially a negligence action to the status of an intentional tort based on the fortuity that touching is a necessary incident to treatment.

*Schenker,* 466 N.E.2d at 133, quoting *Woolley v. Henderson,* 418 A.2d 1123, 1133 (Me. 1980).

■ Similarly, in this case, "touching is a necessary incident" to using reasonable force, as defendant McGrail was authorized to do, for the purpose of maintaining order and discipline within a correctional institution. *See* 103 C.M.R. 505.07 (authorizing use of reasonable force for specific purposes). The jury did not find that McGrail used force for an impermissible purpose that was beyond the scope of his authorization, but only that McGrail used "more force than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution." Answer to Question 2(a). This finding is sufficient to establish a negligent use of force, but it does not establish an "intentional wrongful act" (as that phrase is used in the precedents) on the part of the defendant. For that reason I conclude that, despite satisfying the prima facie elements of a battery, plaintiff has not stated a claim that § 10(c) places outside the scope of the Massachusetts Torts Claim Act. Under the Act, plaintiff's exclusive remedy for his negligence claim is against the employer; his claim against the employee, defendant McGrail, must therefore fail.

Massachusetts precedent would support the same conclusion even if plaintiff had obtained a jury finding that McGrail's conduct in using excessive force was grossly negligent rather than merely negligent. *See McNamara v. Honeyman,* 406 Mass. 43, 45–46, 546 N.E.2d 139, 141–42 (1989) (explicitly finding that the Massachusetts Tort Claims Act extends immunity to acts of gross negligence). This point further explains the problem of trial strategy that plaintiff faced in this case in requesting jury findings on defendants' state-of-mind, and it reinforces the conclusion (see Part IV.A(1)) that plaintiff is in no position to assert now that a new trial should be granted to obtain jury findings on intermediate tests between negligence and malicious and sadistic use of force.

### 2. *Common Law Tort Requirements*

■ As a separate and independent ground, I also conclude that, even if the exclusivity provision of the Massachusetts Tort Claims Act does not apply to this case— if, for example, the "discretionary function" exception in § 10(b) takes this case outside operation of the Act, *see Horta v. Sullivan, supra* (certifying question to Supreme Judicial Court on scope of discretionary function exception under Massachusetts Tort Claims Act)—plaintiff must nevertheless satisfy more than the prima facie elements of a common law battery in order to succeed in a tort claim against a public official.

In the common law of torts, in Massachusetts and elsewhere, it has long been customary to analyze separately the facts required to prove a claim of intentional tort (often called the "elements of a prima facie claim" of intentional tort), the facts required to invoke certain kinds of defenses (often called the "elements of a privilege"), and the facts required to overcome an asserted privilege

(often called "abuse of privilege"). This method of analysis stands in contrast with the method applied in the law of negligence, under which factors favoring the legal recognition of a claim and factors opposing the legal recognition of the claim are weighed against each other in one decisional step (by the court, and, in a jury trial, by the jury if reasonable persons may differ on the outcome of the weighing), to decide whether an actor was negligent.

This contrast is incomplete, since some affirmative defenses are recognized in the law of negligence as well as in the law of intentional torts. The contrast is nevertheless established and has real consequences. One of those consequences is that a court cannot enter a judgment for a plaintiff on a theory of intentional tort merely upon a showing, as in this case, that the prima facie elements of the cause of action have been satisfied. At least when defendants have properly invoked some privilege, classic tort doctrine requires that a court consider the issues of privilege before determining the judgment to be entered. Thus, under tort law, a finding (or admission) that a defendant intended to and did use force, together with a finding (or admission) that the plaintiff did not consent, satisfies the prima facie elements of an intentional tort but does not, until privilege is addressed, establish a common law battery claim.

In this case, it was undisputed that defendant McGrail intended to and did use force against plaintiff, and that the plaintiff did not consent. These elements satisfy the prima facie elements of an intentional tort of battery. Defendant McGrail, however, asserted a privilege to use force for the enforcement of discipline and order within a correctional institution. He clearly has such a privilege, both under common law generally and more specifically in Massachusetts. *See, e.g.*, 103 C.M.R. 505.07 ("An employee [of the Department of Correction] may use reasonable force when it is necessary to ... preserve the overall order and security of the institution").

After hearing the evidence, the jury found, on the one hand, that plaintiff did not prove that McGrail used force for an impermissible purpose, but, on the other hand, that McGrail used "more force than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution." Answers to Questions 1(b) and 2(b). It may reasonably be argued that the jury's finding of use of excessive force is sufficient to overcome "privilege" as it is ordinarily defined in common law precedents. This is plaintiff's primary argument in his motion to alter or amend judgment.

In order to determine whether state law allows a plaintiff to recover for battery in these circumstances, however, we must take account of the fact that more may be required to overcome the "privilege" of a public official than to overcome "privilege" in other contexts. The seminal case in Massachusetts on this issue is *Gildea v. Ellershaw*, 363 Mass. 800, 298 N.E.2d 847 (1973), in which the Supreme Judicial Court held:

> Upon full consideration of all the judicial precedents cited above, and of others too numerous to cite, we hold that the law of the Commonwealth should be, and therefore is, that if a public officer, other than a judicial officer, is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby. This rule is presently limited to public officers acting in good faith, without malice and without corruption.

*Gildea*, 363 Mass. at 820, 298 N.E.2d at 847. This case was decided before the Massachusetts legislature amended the Massachusetts Tort Claims Act to provide an exclusive remedy for negligence of a public employee, but the rule announced has been relied on by the courts even after amendment of the Act. *See, e.g., Duarte v. Healy*, 405 Mass. 43, 537 N.E.2d 1230 (1989). Following the terminology of the Supreme Judicial Court, I refer to the protective rule announced in *Gildea* as "common law immunity." *See Duarte*, 405

Mass. at 49–51, 537 N.E.2d at 1234 (applying the rule as form of common law "immunity").

In order for common law immunity to apply to this case, McGrail first must have been authorized, in the exercise of discretion, "to make a decision and to perform acts in the making of that decision." *Gildea* 363 Mass. at 820, 298 N.E.2d at 847. Defendant McGrail clearly had such authorization under 103 C.M.R. 505.07, which authorizes employees of the Department of Correction to make the decision to "use reasonable force when it is necessary" in one of ten enumerated instances.

As a further requirement under *Gildea*, McGrail's decision and act must have been "within the scope of his duty, authority and jurisdiction." Based on the jury's finding that McGrail did not act for an impermissible purpose, the court must conclude that McGrail acted within the scope of his authority when he used force against the plaintiff.

The final question under *Gildea*, then, is whether McGrail committed more than "negligence or other error" in making his decision and in acting. Even if we assume in this case that defendant McGrail exceeded his privilege to use force, there is no finding that McGrail was more than negligent in so doing. The jury finding from which plaintiff urges the court to infer "abuse of privilege" establishes only that McGrail used "more force than a reasonable custodial officer in the same circumstances would have thought necessary to the enforcement of discipline and order within the institution." Answer to Question 2(a). Under the rule of common law immunity I derive from *Gildea* and *Duarte*, the negligent act of a public official in the course of exercising discretion is not actionable. I conclude that because plaintiff has failed to overcome defendant's assertion of this immunity, plaintiff's state law claim for battery must fail.

I further conclude that I need not determine in this case whether a finding of "intent to use excessive force" or a finding under some other intermediate test as suggested by the plaintiff would overcome this common law immunity under Massachusetts law, even though, in my view, it is highly likely that when the issue is squarely presented, Massa-chusetts law will impose a more demanding standard than negligence, either as an element of a prima facie case (for example, an intent to use excessive force) or as an element of a showing of abuse or inapplicability of a privilege or common law immunity, *cf. Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (clarifying a state-of-mind requirement and noting that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). The decisive point is that whether plaintiff could meet some intermediate test of accountability is not an issue now before this court. Here, as with the federal law claims (see Part IV.A above), the court invited each of the parties to propose for the court's consideration an intermediate test between more force than a reasonable custodial officer would have thought necessary in the circumstances and "malicious and sadistic" use of force. The only questions relevant to overcoming privilege or immunity that were requested by either party were submitted to the jury—the "negligence" questions (use of force that was "excessive" by the objective standard), the questions regarding use of force for an impermissible purpose, and the questions regarding malicious and sadistic use of force. All but the negligence questions were answered favorably to the defendants. Whether either defendant would have been liable under an intermediate test is not a question before the court.

### 3. Added Protection Incident to Unsettled Law

One issue of law addressed above (see Part IV.B) is whether qualified immunity defeats plaintiff's claim under the Massachusetts Civil Rights Act against public officials whom he is claiming "have violated a right under Federal or State constitutional or statutory law that was 'clearly established' at the time." *Duarte*, 405 Mass. at 47, 537 N.E.2d at 1232. More broadly, the court must also consider, as a separate and independent ground, whether Massachusetts law creates, or will create when the issue is squarely presented, a similar form of added protection against liability for public officials accused of common law torts, when the law regarding their acts is unsettled.

For example, under Massachusetts law, is there a concept, analogous to what is called "good faith qualified immunity" in federal law, see *Harlow v. Fitzgerald, supra,* that provides a public officer (including a correctional officer) a shield against liability for damages unless the conduct violates clearly established statutory or constitutional rights of which a reasonable person in the position of the officer would have known?

After considering the written and oral submissions of counsel on this issue, both before and after verdict, I concluded that there is no Massachusetts decision precisely on point to answer these questions, but that it appears highly likely that the Supreme Judicial Court, when presented with the precise issue now before this court, will hold that some form of added protection exists, and that the findings by the jury in this case are not sufficient for liability to attach to the actions of the defendant McGrail in this case.

It is quite true, as plaintiff asserts, that the federal law of qualified immunity does not apply to state-law claims. *See, e.g., Williams v. Thomas,* 692 F.2d 1032 (5th Cir. 1982); *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980). These cases, however, do not address the issue of state law that is raised in this case. The best guidance available regarding state law, up to the present time, is the 1989 decision of the Supreme Judicial Court in *Duarte,* 405 Mass. 43, 537 N.E.2d 1230, which held that a claim under the Massachusetts Civil Rights Act against a state officer performing discretionary functions is subject to a qualified immunity like that applicable to federal law claims asserted under 42 U.S.C. § 1983.

Although the court in this section of *Duarte* was addressing a claim under the Civil Rights Act rather than a common law claim, I conclude that the reasoning supporting qualified immunity in *Duarte* is on grounds that have force also in the context of other theories or labels for state law claims. The public interests underlying the Supreme Judicial Court's recognition of qualified immunity in *Duarte* are equally compelling in the context of claims for common law battery. Concerns about the impact of rules of liability on the performance of the duties of public officials do not vary because liability is claimed on a theory of battery rather than on a theory of violation of civil rights.

I therefore conclude that the best present indicators of Massachusetts law support the recognition of protection against liability in contexts of unsettled law with respect to a state law claim of battery by a custodial officer who negligently used excessive force. Because the jury found that defendant McGrail did not act maliciously and sadistically in using force, plaintiff's state-law claims are defeated for the independent reason of failure to overcome this rule of added protection for public officers in contexts of unsettled law.

## D. *State Law Claims Against Lopes*

Plaintiff failed to prove his state-law claim (a "duty" to stop the use of "excessive force" in his presence) against defendant Lopes because plaintiff did not prove the "duty" element of his prima facie claim.

Although plaintiff argued that defendant Lopes should have taken some affirmative action to stop defendant McGrail's use of "excessive force," plaintiff failed to establish that Lopes had any duty to take this affirmative action. *See, e.g., DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Moreover, plaintiff has not identified any precedent, and this court is aware of none, for imposing on one correctional officer either (a) strict liability for failing to stop another officer's use of excessive force, or (b) liability for negligently failing to stop another officer's use of excessive force in the context of use of force for the permissible purpose of enforcing discipline and order in a correctional institution.

Here, also, the plaintiff chose not to request submission to the jury of an intermediate test of accountability, and the jury found that Lopes did not choose his course of conduct maliciously and sadistically for the very purpose of causing harm. Answer ("NO") to second part of Question 3. Because plaintiff did not prove all the elements of his prima facie claim against Lopes, this claim fails.

Even if plaintiff had established a prima facie claim for negligent failure to act, his claim against Lopes would nevertheless fail for the same reasons that his claim against McGrail failed: his negligence claim can not overcome either the exclusive-remedy provision of the Massachusetts Tort Claims Act or the protection afforded to Lopes under "common law immunity" as explained above in Part IV.C.

### E. The Effect of Answers to Question 5

Plaintiff argues that the jury's finding of punitive damages against defendant McGrail in answer to Question 5(b) satisfies an intermediate test of intent to use excessive force, and that based on this intent, plaintiff has overcome any privilege or immunity asserted by defendant. This argument fails, however, because the court's instructions to the jury on Question 5 allowed the jury to answer YES without finding an intent to use excessive force. The instructions that were given, without objection by either party, were as follows: "Whether you decide to award punitive damages against a defendant should be based on whether you find that the defendant acted *willfully, deliberately,* maliciously, or with reckless disregard of the plaintiff's constitutional rights." (Emphasis added.)

The words "willfully" and "deliberately" were not defined either in the requests of the parties from which the court borrowed in giving this instruction or in any other part of the charge. Whenever used—including use in a statute, a judicial opinion, or a charge to the jury—the words "willfully" and "deliberately," like the word "intent," convey precise meaning only in relation to some consequence of conduct, or some circumstance associated with the conduct. *See generally, Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (construing the "willfulness" requirement of the Money Laundering Control Act of 1986, as amended, 31 U.S.C. § 5322(a)). When "willfully" or "deliberately" is used in one paragraph of a charge to the jury, the consequence or circumstance may be indicated either explicitly or implicitly elsewhere in the charge or verdict form. Had the jury made a finding of use of force for an impermissible purpose or

maliciously and sadistically for the very purpose of causing harm, it might plausibly be argued that we should infer that the jury found that the defendants' conduct was willful or deliberate in relation to an impermissible purpose. But the jury did not so find. Moreover, it is an overstatement to say, as plaintiff contends, that the finding of a dollar amount in answering Question 5(b) was an implicit finding that defendant McGrail intended to use excessive force rather than merely intended to use force that, by an objective standard, has been determined by the jury to be excessive.

That the jury understood that they were not finding "intent to use excessive force" is further indicated by the fact that they made a dollar finding of punitive damages against defendant Lopes as well, in Question 5(c), even though they found that plaintiff did not prove that Lopes participated in using any force.

Furthermore, because plaintiff has failed to obtain findings to overcome the added protection of privilege or qualified immunity, the verdict will not support a judgment for plaintiff on any of the theories asserted against either defendant. In these circumstances, the findings of punitive damages are not relevant. They cannot independently become the basis for any award.

### V.

Plaintiff is, in essence, asking this court to hold that under Massachusetts law a plaintiff is entitled to compensation if a corrections officer negligently uses more force than was needed when exercising the privilege to use force for discipline and order within a correctional institution. I conclude, instead, that rules of protection against liability (under one or more grounds of privilege, exclusivity of remedy, common law immunity, or qualified immunity) exist under Massachusetts law and protect public officials from liability at least as to negligent acts. I predict that when the issue is squarely presented, Massachusetts courts will impose some more demanding test of accountability than negligence. Because plaintiff has failed to overcome these barriers to his claim, plaintiff cannot prevail.

## VI.

Plaintiff requests an award of attorney fees. In view of the court's disposition of other grounds plaintiff has asserted for altering or amending the judgment, plaintiff is not a prevailing party in this case even in any attenuated sense. This moots the arguments plaintiff has asserted for an award of attorney fees.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion to Alter or Amend the Judgment (Docket No. 25) is denied.

(2) The Clerk is directed to enter in a separate document a Final Order as follows:

Plaintiff's Motion to Alter or Amend the Judgment (Docket No. 25) is denied.