98 F.3d 1344
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Bill SAMPLEY, Plaintiff-Appellant,
v.
Charles E. WRIGHT and Paz Sango, Defendants-Appellees.
 No. 95-3549.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 8, 1996.*
Decided Oct. 8, 1996.
 
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Pro se appellant Bill Sampley, a state prisoner, filed this civil rights action under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. He claims that while incarcerated his due process rights were violated when he was placed in restraints by order of the prison superintendent. He also claims that medical procedures he was subjected to constitute cruel and unusual punishment within the meaning of the Eighth Amendment. After a jury verdict for the prison superintendent and judgment as a matter of law in favor of the prison physician, Sampley appeals the jury instructions regarding the due process claim; the scope of cross-examination of his witness; and the judgment as a matter of law. Finding no merit to his claims, we affirm the district court.
 
 
 2
 After an approximately month-long hunger strike, Sampley was transferred from the Maximum Control Complex (MCC) to the Westville Correctional Center to be placed in the hospital unit. Sampley, who had an extensive record of dangerous behavior, had either swallowed or inserted in his rectum hardware including a handcuff key, razor blades, and pieces of a hacksaw. MCC Superintendent Charles Wright ordered that Sampley be placed in restraints while in the Westville infirmary because of security reasons, including assaults on prison staff.
 
 
 3
 Sampley challenges two jury instructions given by the district court on his due process claim. He claims that jury instruction number nine was erroneous because it only restated the Fourteenth Amendment and did not interpret or apply the amendment's language. Sampley also challenges jury instruction number twelve as an inaccurate application of the relevant law, which read:
 
 
 4
 The Plaintiff contends that Defendant Wright violated his rights when he ordered him placed in restraints. In deciding this claims [sic], you must first decide what orders, if any, were given by this Defendant regarding the use of restraints. You must then decide the reason or reasons why this Defendant gave those orders.
 
 
 5
 The law permits prison officials to decide which restraints are to be applied to prison inmates, but requires those officials to base their decisions on professional judgment. The nature of the restraint and its duration must bear some reasonable relationship to the purpose for which the restraint is used. Security of the institution and the safety of the inmate and of others are valid reasons for the use of restraints.
 
 
 6
 You may not find this Defendant liable for ordering the use of restraints unless you find that his order was such a substantial departure from accepted professional judgment, practice, or standards as to show that he actually did not base his decision on such a judgment.
 
 
 7
 Our review of jury instructions is limited. Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996). We interpret jury instructions as a whole, determining whether they sufficiently inform the jury of the correct, applicable law. Id. "In this review we avoid fastidiousness and inquire only whether the correct message was conveyed to the jury reasonably well." Id.
 
 
 8
 Contrary to Sampley's contention, jury instruction twelve discusses the standard for prison officials ordering restraints on inmates. The Due Process Clause of the Fourteenth Amendment requires that a physical restraint bear some reasonable relation for which it is used. Youngberg v. Romero, 457 U.S. 307, 321-23 (1982); Wells v. Franzen, 777 F.2d 1258, 1261-62 (7th Cir.1985).[1] At trial, Sampley had the burden of proving that the restraints used were a substantial departure from the accepted professional practice, enough to show that the prison official did not base the decision on proper professional judgment. See Youngberg, 457 U.S. at 323. It is also well-established that decisions regarding prison security are within the province and professional expertise of corrections officials. See Turner v. Safley, 482 U.S. 78, 85-86 (1987).
 
 
 9
 We will not compare every nuance and detail of the instructions with the applicable law, but instead we examine whether the correct message was reasonably conveyed to the jury. We conclude that the instructions sufficiently conveyed the law, that is, in the proper exercise of professional judgment prison officials may restrain inmates if the nature of the restraint reasonably relates to the purpose for the restraint, such as institutional safety.
 
 
 10
 Sampley next challenges the district court's ruling allowing defense counsel to go beyond the subject matter of direct examination while cross-examining Sampley's witness, Evan Lowry, an Indiana Department of Corrections Officer. After Sampley's objection, the district court asked defense counsel if he was making Lowry his own witness, which defense counsel then did. Sampley claims that the district court abused it's discretion not only by allowing this cross-examination, but also by allowing defense counsel the ability to make Lowry their own witness.[2]
 
 
 11
 A district court has the power to exercise reasonable control over the interrogation of witnesses. Fed.R.Evid. 611(a). A district court also has wide discretion in managing cross-examination pursuant to Federal Rule of Evidence 611(b). Therefore, we will only reverse if there is an abuse of discretion. See Mercado v. Ahmed, 974 F.2d 863, 872 (7th Cir.1992). Because cross-examination is under the purview of the district court's discretion, "the effect is to confine the matter largely to the trial level and to remove it from the area of profitable appellate review." Id. at 872-73 (citation omitted).
 
 
 12
 After reviewing the trial transcript, we conclude that the district court did not abuse its discretion when managing the cross-examination of Lowry, nor when it allowed defense counsel to make Lowry its own witness. Pursuant to Fed.R.Evid. 611(b), the district court has the power to enlarge the scope of cross-examination and "permit inquiry into additional matters as if on direct examination." The examination at issue involved Lowry's testimony as to the use of restraints at the MCC while he was employed as a corrections officer. The defense examination fleshed out Lowry's work responsibilities, including the use of physical restraints in conjunction with the MCC's Administrative Procedure, which Lowry helped develop. Sampley then had the opportunity to re-examine Lowry after defense counsel's interrogation. The district court also allowed defense counsel to qualify Lowry as their own witness as provided in Fed.R.Evid. 611(c). As long as the testimony proceeded properly pursuant to the Federal Rules of Evidence and Sampley had the opportunity to re-examine Lowry, there was no abuse of discretion by the district court.
 
 
 13
 Last, Sampley claims that the district court's entry of judgment as a matter of law in favor of the prison's physician, Paz Sango, was improper. We review the entry of judgment as a matter of law de novo. Hammond Group, Ltd. v. Spalding & Evenflo Co., Inc., 69 F.3d 845, 848 (7th Cir.1995). We consider the evidence in the light most favorable to the nonmoving party and reverse only if enough evidence exists to support a verdict in favor of the nonmoving party. Id.
 
 
 14
 Sampley claims that Dr. Sango's actions of inserting a medical instrument into his rectum to see the hacksaw pieces, razor blades, and a handcuff key he had either swallowed or inserted in his rectum constituted cruel and unusual punishment. Sampley must demonstrate that the medical treatment he received was so improper as to constitute deliberate indifference to his serious medical needs and the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Additionally, the Eighth Amendment is not the appropriate vehicle for bringing medical malpractice claims. Snipes v. Detella, et al., No. 94-2313 slip. op. at 7 (7th Cir. Sept. 9, 1996).
 
 
 15
 Sampley claims that Dr. Sango used invasive surgery by placing forceps in his rectum and that this surgery was against his will. Evidence at trial shows that Dr. Sango discovered foreign objects in Sampley's rectum and abdomen via x-ray. After administrating local anesthesia, Dr. Sango inserted a small anoscope in Sampley's rectum to see the objects. The procedure lasted less than five minutes. Dr. Sango also testified that the procedure was done for the benefit of Sampley's health, specifically, to avoid the puncture and bleeding of his rectum and colon, and it is not clear from the record that forceps were ever used.
 
 
 16
 Moreover, the evidence presented at trial fails to demonstrate that Dr. Sango disregarded Sampley's potential risk of serious harm, and instead demonstrates that Dr. Sango used reasonable judgment in dealing with the hardware that Sampley had either swallowed or inserted. Considering the evidence in a light most favorable to Sampley, we conclude that there is no sufficient evidence that would support a verdict in his favor. Therefore, the district court ruled correctly by removing this issue from the jury and ruling as a matter of law.
 
 
 17
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 This court notes that Youngberg and Wells are factually distinguishable from the case at bar. In Youngberg, the Supreme Court addressed the substantive rights of involuntarily committed mentally retarded persons under the Due Process Clause. See id., 457 U.S. at 314. In Wells, the plaintiff had suicidal tendencies, which led to his being restrained. Id., 777 F.2d at 1260-61. Here, Sampley had dangerous propensities which evoked health and safety issues
 
 
 [2]
 Sampley also claims there was a pre-trial agreement to the extent that defense counsel would not call any of his witnesses directly. Sampley refers to the final pretrial conferences of September 18 and 20, 1995, before Magistrate Judge Robin D. Pierce. He asks this court to infer such an agreement based upon a discussion of the witnesses to be called at trial and the court's order. Neither one evidences such an agreement